UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────────────

JOSEPH MCGOWAN,

                          Plaintiff,

                                                    Case # 12-CV-6557-FPG

v.

                                                    DECISION AND ORDER

JOHN A. SCHUCK, et al.,

                          Defendants.

────────────────────────────────────

    Before the Court are two motions.  Eleven of the defendants have filed a motion for

summary judgment (ECF No. 8), and the plaintiff has filed a motion for default judgment (ECF

No. 19).

## BACKGROUND[1]

    In 2009, Plaintiff Joseph McGowan was an inmate at Attica Correctional Facility

("Attica") in Attica, New York.  ECF No. 8-1 at ¶ 1.  The facts giving rise to this action began on

October 30, 2009, when McGowan was cited with a misbehavior report by an Attica corrections

officer, Defendant John Schuck, for possessing a weapon and homemade alcohol in his cell.  *Id.*;

ECF No. 4 at ¶ 1.  This report triggered a disciplinary hearing where a corrections lieutenant

acting as the hearing officer, Defendant Darryl Borawski, found McGowan guilty of possessing a

───────────────

[1]     The facts below are drawn from the parties' Local Rule 56.1 statements, declarations, and
exhibits filed in connection with the defendants' summary judgment motion.  Notably, the facts
are also drawn from the Amended Complaint, which McGowan has verified by declaring its
factual assertions true under penalty of perjury.  ECF No. 4 at p. 48.  As the Second Circuit has
observed, "[a] verified complaint is to be treated as an affidavit for summary judgment
purposes."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

weapon and alcohol in his cell and thus sentenced McGowan to 18 months in the special housing

unit ("SHU").[2]  ECF Nos. 4 at ¶ 1; 8-1 at ¶ 2.  McGowan has asserted due process claims against

all the officials who played a role in this hearing, and the pending summary judgment motion is

primarily concerned with these claims.  Thus, the details of the hearing, in the light most

favorable to McGowan,[3] are set forth below.

In short, McGowan argues that the hearing was marked by a litany of defects.  First,

Defendant Schuck's misbehavior report, which again triggered the hearing, contained a falsity.

Schuck wrote in the report that he personally observed McGowan flushing something down the

toilet, presumably contraband, on October 30, 2009.  ECF No. 4 at ¶ 9.  At the hearing, however,

Schuck testified that upon entering McGowan's cell, he never actually observed McGowan

flushing something down the toilet; rather, he had simply noticed that the toilet had been recently

flushed.  ECF No. 8-4 at 53, 67.

McGowan also asserts that other false reports tainted the disciplinary hearing.  For

instance, Schuck and Sergeant James Rozanski wrote in reports that McGowan possessed a total

of 2.7 gallons of homemade alcohol in his cell.  ECF Nos. 4 at ¶ 16; 8-4 at 5–6, 15–17, 60–63,

113–14, 129.  Based on the size of the nine bottles in question, however, McGowan could have

possessed at most 1.7 gallons.  *Id.*  Additionally, Officer Thomas Valentino falsely wrote in a log

---

[2]      SHU confinement is form of particularly restrictive confinement where an inmate is typically locked in his cell for 23 hours per day.
         The Court also notes that as additional punishment, Borawski recommended that McGowan lose 12 months of "good time," *i.e.*, a 12-month reduction to McGowan's prison sentence that McGowan received for good behavior.  ECF No. 4 at ¶ 1.  McGowan explicitly stated in the Amended Complaint, however, that he is "not seeking and will not seek to have this good time restored."  *Id.*  Accordingly, as far as this case is concerned, McGowan's punishment was simply 18 months of SHU time.  ECF No. 5 at 2.
[3]      On a motion for summary judgment by the defendants, courts construe all of the evidence submitted in the light most favorable to the plaintiff.  *See Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004).

book that the incident occurred at around 1:30 p.m. on October 30, 2009 even though it actually occurred around 2:20 p.m.  ECF Nos. 4 at ¶ 14; 8-4 at 15–19, 88–93.  Finally, Officers Jeffrey Novara and Edward Hulton, who restrained McGowan and frisked McGowan's cell on the day in question, did not report their involvement in the incident in Schuck's misbehavior report.  ECF Nos. 4 at ¶¶ 12–13; 8-4 at 31, 46–48, 76, 111, 120.

In a similar vein, McGowan asserts that various Attica officials provided false or contradictory testimony at the hearing.  For instance, Defendant Novara testified at the hearing that he and Defendant Schuck physically escorted McGowan out of his cell after the incident.  *Id.* at ¶ 11; ECF No. 8-4 at 33, 36–44.  Schuck's report and testimony, however, indicated that McGowan exited the cell on his own after officials ordered him to exit.  *Id.* at ¶ 11; ECF No. 8-4 at 33, 36–44.  Second, Defendant Rozanski falsely testified that McGowan submitted to urinalysis testing as a result of the incident.  ECF Nos. 4 at ¶ 17; 8-4 at 115–17.  Third, Defendant Wendy Philips, a commissary clerk at Attica, falsely testified that the commissary maintained a list of items it sold which contained alcohol.[4]  ECF Nos. 4 at ¶ 20; 8-4 at 128–29.

McGowan additionally asserts that key evidence was destroyed by Defendant Rozanski prior to the hearing.  Specifically, right after Rozanski smelled the bottles in question and determined that they contained homemade alcohol, he destroyed the bottles and their contents.  ECF Nos. 4 at ¶ 15; 8-4 at 111–13.  Thus, at the hearing, McGowan was not able to fully present his key defense, namely, that the liquid in question was not homemade alcohol.  *Id.*

Furthermore, McGowan claims that the hearing officer, Defendant Borawski, also made a

---

[4]     For context, McGowan's defense at the hearing to the possession-of-alcohol charge was that the bottles found in his cell formerly contained alcoholic mouthwash, and that is why officers thought the bottles smelled like alcohol.  ECF No. 8-4 at, *e.g.*, 126–28.  McGowan argued at the hearing that he bought this mouthwash from the commissary, and the list referenced here would confirm that the mouthwash sold at the commissary contained alcohol.  *Id.*

variety of errors throughout the hearing.  First, Borawski did not allow McGowan to call an

inmate witness to testify at the hearing, and then Borawski lied on the record by saying that the

inmate simply refused to testify.  ECF Nos. 4 at ¶ 18; 8-4 at 45–47.  Second, Borawski extended

the time to complete the hearing—which began on November 4, 2009 and ended on November

17, 2009—for a phony reason, namely, that Defendants Schuck and Valentino were temporarily

unavailable as witnesses.  ECF Nos. 4 ¶ 19; 8-1 at ¶ 3; 8-4 at 21–22, 47–48, 138.  Third,

Borawski never obtained a list of items sold in the commissary which contained alcohol.  ECF

Nos. 4 at ¶ 21; 8-4 at 128–29.  Fourth, Borawski stated on record that McGowan was guilty prior

to hearing all of the evidence.  ECF No. 4 at ¶ 19.  Fifth, more generally, Borawski relied on

"false evidence" to render the guilty disposition.  *Id.*

McGowan also makes claims against Defendant Sandra Prusak, a records coordinator at

Attica.  Defendant Prusak prepared a hearing transcript that McGowan submitted along with a

petition he filed in state court in 2010 to challenge the disciplinary decision and sentence.  ECF

No. 4 at ¶¶ 22–25.  McGowan asserts in his Amended Complaint that Defendant Prusak

"intentionally" altered a key part of this transcript.  ECF No. 4 at ¶¶ 22–25.  Specifically, Prusak

altered a part of an official's testimony where the official testified that, upon entering

McGowan's cell on the day in question, he had *not* seen a homemade Plexiglas weapon on

McGowan's bed.  ECF Nos. 4 at ¶¶ 22–25; 8-4 at 34 (Question by McGowan: "When [you]

entered the cell, did [you] see a weapon on the bed in plain view?" Answer by Attica Official:

"*No*.") (emphasis added).  In the hearing transcript she prepared for the state court, however,

Prusak recorded the official as indicating that he *had* seen a weapon in on McGowan's bed.

(Question by McGowan: "When [you] entered the cell, did [you] see a weapon on the bed in

plain view?" Answer by Attica Official: "*Yes*.") (emphasis added).  According to McGowan, this

4

alteration crippled his key defense at the hearing, which was that there was never a weapon on his bed, and to the extent a weapon was in his cell at all, it was planted there by guards or it was another inmate's weapon. More generally, the alteration violated his due process rights and his right to access the state court.

Apart from the November 2009 hearing, there is one other factual scenario at issue in the summary judgment motion. First, as a general matter, McGowan asserts that upon his return to Attica's general population after 18 months in the SHU, he was twice assaulted by Attica officials. ECF No. 4 at ¶¶ 32–34, 49–50. The second assault occurred on July 26, 2011. *Id.* at ¶ 43. On this date, McGowan states that during a cell frisk, Defendants Hulton and Officer Erik Hibsch found legal papers in his cell referencing Attica officials. *Id.* at ¶¶ 45–46. Accordingly, in retaliation, Hulton and Hibsch pushed McGowan to the ground, causing McGowan to hit his head and sustain a large gash wound near his hairline. *Id.* at ¶ 49. Hulton and Hibsch then stomped and kicked McGowan in the head and body, causing various injuries. *Id.* at ¶¶ 50, 55.

After the assault, Hibsch apparently came back to McGowan's cell along with another official. *Id.* at ¶ 53. The two officials told McGowan he could only go to the hospital if he agreed to tell medical personnel that he sustained the injuries by simply falling and hitting his head. *Id.* McGowan thus refused to go to the hospital and instead lay in his cell bleeding from the wound. *Id.* at ¶ 56. Because of this refusal to go to the hospital, Sergeant Ronald Hadsall later cited McGowan with a misbehavior report for failing to report an injury to staff. ECF No. 4 at ¶ 66. In a subsequent disciplinary hearing, Lieutenant Gordon Biehl found McGowan guilty of the charge and sentenced McGowan to a total of 20 days in keeplock.[5] *Id.* at ¶ 69.

McGowan was eventually ordered by another official to go to the hospital for treatment.

---

[5]      Keeplock confinement is similar to SHU confinement—an inmate is typically locked in his cell for 23 hours per day.

*Id.* at ¶¶ 57–58.  At the prison hospital, Nurse Timothy Jelonek observed the gash wound—which was bleeding "constant[ly]"—as well as the "footprints" on McGowan's head and shoulders.  ECF No. 10-1 at ¶¶ 3–10.  Nurse Jelonek refused, however, to stitch the wound.  *Id.*; ECF No. 4 at ¶ 59.  Nurse Jelonek only covered McGowan's wound with gauze and took pictures of his injuries.  ECF Nos. 4 at ¶ 59; 10-1 at ¶¶ 3–10.  McGowan now has a permanent scar on his head from the untreated wound.  ECF Nos. 4 at ¶ 60; 10-1 at ¶¶ 5, 9–11.

For purposes of the summary judgment motion, McGowan has made essentially three categories of claims based on the facts above.  First, he has made due process claims against all of the officials involved in the November 2009 hearing.  Second, he has made due process claims against Defendants Hadsall and Biehl for the July 2011 report and hearing regarding his failure to report injuries to staff.  Third, he has made a deliberate indifference claim against Nurse Jelonek for failing to adequately treat his gash wound in July 2011.

## DISCUSSION

Eleven of the defendants in this case, specifically, Defendants Borawski, Schuck, Novara, Rozanski, Valentino, Hulton, Philips, Prusak, Jelonek, Hadsall, and Biehl, have now collectively filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[6] ECF No. 8-5.  McGowan has also filed a motion for default judgment.  ECF No. 19.  Below, the Court first addresses the summary judgment motion.

The statutory backdrop for McGowan's claims is 42 U.S.C. § 1983.  Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights,

---

[6]     The Court observes that defendants' counsel indicated in the electronic docket entry describing the summary judgment motion (ECF No. 8) that Defendants Hibsch and Meegan are also part of the summary judgment motion.  These two defendants are not, however, addressed in the memorandum of law.  *See* ECF No. 8-5.  Thus, the Court does not construe the motion as concerning Defendants Hibsch and Meegan, and they remain in the case.

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In other words, to recover under this section, McGowan must show that the defendants violated his federal constitutional or statutory rights.

## I.      MOTION FOR SUMMARY JUDGMENT

As an initial matter, the moving defendants have asked the Court in their motion to clarify a screening order it previously issued. The Court briefly addresses this matter before moving on to the merits of the motion.

### A.  Screening Order Issued on June 10, 2014

McGowan is prosecuting this case *in forma pauperis*. Thus, pursuant to 28 U.S.C. § 1915(e), the Court conducted a preliminary screening of his Amended Complaint to determine whether it, among other things, stated a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). On June 10, 2014, United States District Judge Richard J. Arcara issued a screening order dismissing some of the claims. ECF No. 5. The defendants have now asked for clarification as to which claims and which defendants were actually dismissed by the screening order. ECF No. 8-5 at 7–8. More pointedly, the defendants assert that Schuck, Novara, Valentino, Rozanski, Hulton, Philips, Prusak, Hadsall, and Biehl were dismissed by the screening order. *Id.* The Court makes the following observations about the order.

First, Judge Arcara addressed the November 2009 hearing that resulted in McGowan spending 18 months in the SHU. ECF No. 5 at 3–6. Specifically, Judge Arcara noted that a prisoner may not base a § 1983 claim on allegations that a defendant filed a false report or provided false testimony against the prisoner. *Id.* at 4–5. Rather, as courts in this Circuit have observed, "[t]he only constitutional violation that could occur in [the false report or false testimony] situation is if plaintiff were not provided adequate due process in the [disciplinary]

proceeding, and then the claim is not based on the filing of a false report or the giving of false

testimony, but on the procedures employed at the hearing." *Collins v. Ferguson*, 804 F. Supp. 2d

134, 138–39 (W.D.N.Y. 2011) (citations and internal quotations omitted); *see also Freeman v.*

*Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

For this reason, Judge Arcara dismissed with prejudice McGowan's "claims alleging that

defendants provided false reports and false testimony," however, he ruled that "the remaining

due process claims may proceed."  ECF No. 5 at 4–6.  With this language, Judge Arcara

dismissed the due process claims against Defendants Schuck, Novara, Valentino, Philips, and

Hulton, all of whom allegedly provided false reports or false testimony in connection with the

hearing.  Defendants Schuck, Novara, Valentino, and Philips are not named elsewhere in the

Amended Complaint, and thus they were dismissed from the case by the screening order.

Hulton, however, remains in the case due to his alleged involvement in the July 2011 assault.

As for Defendant Rozanski, the due process claims against him were not fully dismissed

by the screening order.  It is true that some of McGowan's claims against Rozanski are based on

Rozanski providing false reports and false testimony in connection with the disciplinary hearing,

and, for the reasons stated above, those claims were dismissed by the screening order.  However,

McGowan also asserts that Rozanski destroyed evidence prior to the disciplinary hearing;

specifically, Rozanski destroyed the homemade alcohol that McGowan was charged with

possessing.  The due process claim arising out of Rozanski's destruction of evidence survived

the screening order, and thus it will be discussed later on in this decision.6152

Additionally, the Court does not construe the screening order as dismissing the claims

against Defendant Prusak, who allegedly falsified a transcript submitted to a New York state

court (ECF No. 4 at ¶¶ 22–25).  Based on a straightforward reading of Judge Arcara's dismissal

of "false reports and false testimony" (ECF No. 5 at 5), Judge Arcara was only dismissing claims based on false misbehavior reports and false testimony provided at the disciplinary hearing.  ECF No. 5 at 3–5.  Prusak's transcript is not, of course, a false misbehavior report or false testimony provided at the hearing.  Thus, the claims against Prusak were not dismissed by the screening order, and they too will be discussed later on in this decision.

The screening order also addressed the July 2011 hearing that resulted in McGowan spending 20 days in keeplock for failing to report an injury to staff.  ECF No. 5 at 8–10.  In the Amended Complaint, McGowan asserted a due process claim against Defendant Hadsall—who cited McGowan with the misbehavior report that triggered the hearing, and Defendant Biehl— who conducted the hearing.  With respect to these due process claims, Judge Arcara observed that as a threshold matter for stating such claims, a plaintiff must allege that he lost a constitutionally protected "liberty interest."  *Id.* (citing *Carter v. Carriero*, 905 F. Supp. 99, 103 (W.D.N.Y. 1995).  In other words, to be entitled to due process at all, a plaintiff must first allege that he was deprived of some interest of constitutional magnitude.  As Judge Arcara observed, McGowan's due process claims against Hadsall and Biehl failed to satisfy this threshold requirement.  ECF No. 5 at 8–10.  The reason is straightforward: There is broad agreement in this Circuit that, absent unusual or harsh conditions, keeplock or SHU confinement of 30 days or less does not qualify as the loss of a constitutionally protected liberty interest.  *See Williams v. Keane*, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (collecting cases).  Accordingly, because McGowan spent only 20 days in keeplock as a result of the July 2011 hearing, Judge Arcara dismissed the due process claims against Hadsall and Biehl.  ECF No. 5 at 10.  These claims were the only claims against Hadsall and Biehl, and thus these two defendants were also dismissed from the case by the screening order.

The Court now turns to the merits of the summary judgment motion.

**B.  All Official-Capacity Claims**

McGowan has sued all of the defendants in this case in their official and individual capacities.  ECF No. 4 at ¶¶ 4–16.  All of the defendants are state officials and, once again, McGowan seeks money damages against these officials under 42 U.S.C. § 1983.  The defendants argue that the claims for money damages against them in their official capacities are barred by the Eleventh Amendment.  ECF No. 8-5 at 3.

The defendants are correct.  In short, "it is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities." *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir. 1993).  Accordingly, all official-capacity claims for money damages are now dismissed.  McGowan is confined to seeking damages against these defendants in their individual capacities.

**C.  Individual-Capacity Claims At Issue in the Summary Judgment Motion**

Given that the July 10, 2014 screening order dismissed many of the defendants nominally moving for summary judgment, there are, in actuality, only four defendants moving for summary judgment: Borawski, Rozanski, Prusak, and Jelonek.  These defendants are discussed below.

Summary judgment is appropriate when the moving party shows, through evidence in the record, that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  The moving party has the burden of showing that no genuine factual dispute exists.  *Carlton v. Mystic Transp.*, Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In determining whether such a dispute exists, the court draws all reasonable inferences and resolves all ambiguities in favor of the non-moving party.  *See Okin v. Vill. of*

*Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009).  Importantly, the court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Notably, because McGowan is proceeding *pro se*, this Court interprets his papers in opposition to the motion "to raise the strongest arguments that they suggest."  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citations and internal quotations omitted); *Reyes v. Koehler*, 815 F. Supp. 109, 112 (S.D.N.Y. 1993) ("[P]ro se plaintiff[s] [are] to be given special latitude on summary judgment motions.") (citations and internal quotations omitted).

### 1. *Defendant Prusak*

Defendant Prusak was a records coordinator at Attica.  She transcribed McGowan's November 2009 disciplinary hearing, and this transcript was later submitted along with a petition McGowan filed in state court to challenge the decision coming out of the hearing.

The Court first gives some context for this state court petition.  Article 78 of New York's Civil Practice Law and Rules ("CPLR") provides for a device in which a person can petition for judicial review of an administrative agency's decision by a New York state court.  *See* N.Y. C.P.L.R. §§ 7801–06.  The primary form of relief in an Article 78 proceeding is equitable, not monetary.  *See* N.Y. C.P.L.R. § 7806.  Thus, prisoners commonly use Article 78 to try to reverse disciplinary decisions rendered by prison officials and to, more specifically, be released from the SHU.  *See, e.g.*, *Fludd v. Goldberg*, 854 N.Y.S.2d 362, 368 (2008) (granting prisoner's Article 78 petition and thus ordering officials to release him from the SHU).

In 2010, McGowan indeed utilized Article 78 to file a petition in New York state court to

reverse the decision of the November 2009 disciplinary proceeding.[7]  *See McGowan v. Fischer*, 930 N.Y.S.2d 313 (App. Div. 3d Dep't 2011).  In terms of relief, McGowan sought to have the records of the disciplinary proceeding expunged and to be released from the SHU.  Petition at ¶¶ 65–66.  The Article 78 court ultimately dismissed McGowan's petition, and in doing so, rejected his key contentions that the disciplinary decision was not supported by substantial evidence and that the hearing officer was biased.  *See id.* at 313–14.

Defendant Prusak transcribed the November 2009 hearing for the Article 78 court and, according to McGowan, she "intentionally" falsified a key part of the transcript.  ECF No. 4 at ¶ 24.  Specifically, Prusak altered a part of an official's testimony where the official testified that, upon entering McGowan's cell on October 30, 2009, he *had not* seen a homemade Plexiglas weapon on McGowan's bed.  The hearing transcript that Prusak prepared for the Article 78 court, however, read as though this official *had* seen a weapon on McGowan's bed upon entering McGowan's cell.  McGowan asserts that the falsified hearing transcript violated his due process rights and, construing his arguments liberally, denied him access to the Article 78 court.  These two claims are addressed below.

*a. Due Process Claim*

The due process claim can be dealt with in short order.  For a prison disciplinary hearing, due process generally means that an inmate must receive the following process at minimum: (1)

---

[7]     The Court has taken judicial notice of McGowan's Article 78 petition even though neither party included it in their summary judgment materials.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citations and internal quotations omitted).  Notably, the Court reads the petition only for the fact that McGowan sought certain relief or raised certain issues in state court, not for the for the truth of any issues or matters asserted.

McGowan's Article 78 petition is organized in numbered paragraphs; it will be cited to as follows: "Petition at ¶ __."

"advance written notice of the claimed violation;" (2) the ability "to call witnesses and present documentary evidence in his defense;" and (3) "a written statement [by] the factfinder[] as to the evidence relied upon and the reasons for the disciplinary action taken." *Willey v. Kirkpatrick*, 801 F.3d 51, 64 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974)). Due process "does not require, however, that a transcript be made or given to an inmate after a disciplinary proceeding." *Brito v. Coughlin*, No. 88 CIV. 8064 (PNL), 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989); *see also Excell v. Woods*, No. 9:07-CV-0305 GTS/GHL, 2009 WL 3124424, at *22 (N.D.N.Y. Sept. 29, 2009). In short, because due process does not even require that McGowan receive a transcript of the hearing, it certainly does not require that he receive a fully accurate transcript. Thus, the due process claim against Prusak must be dismissed.

The Court makes one additional observation here. New York has its own regulations regarding the process that must be afforded prisoners in disciplinary hearings. *See* 7 N.Y.C.R.R. § 253. One particular provision in these regulations provides that "[t]he entire hearing must be electronically recorded." 7 N.Y.C.R.R. § 253.6(b). Two brief points must be made about this provision. First, as a factual matter, the Court notes that this provision was followed—the hearing was electronically recorded; indeed, McGowan used this recording to confirm that there was an error in the transcript. ECF No. 4 at ¶¶ 22, 25. Second, to the extent this provision could at all be construed to require that a transcript be made of the hearing, that would still not change the federal due process analysis—state law does not affect the process a person is due under the federal Constitution. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002) ("Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (quotations, internal citations, and internal alterations omitted). The

overall takeaway from these two points is the same: New York's regulations regarding prison disciplinary hearings do not affect the federal due process analysis regarding the transcript.

In sum, Prusak's motion for summary judgment with respect to the due process claim against her is granted.

### b. Access-to-the-Courts Claim

Construing McGowan's arguments liberally, McGowan has also asserted an access-to-the-courts claim against Prusak for falsifying the transcript. The Supreme Court has indeed recognized that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right "has particular application to prisoners . . . [who] are . . . raising civil rights claims about the conditions of their confinement." *Bourdon,* 386 F.3d 88, 93 n.8 (2d Cir. 2004). Accordingly, courts in this Circuit generally agree that "an Article 78 petition that challenges an inmate's remand to SHU confinement is an action for which access to the courts is constitutionally guaranteed." *Collins v. Goord*, 438 F. Supp. 2d 399, 417–18 (S.D.N.Y. 2006) (collecting cases).

McGowan can thus sustain a constitutional claim against Prusak for violating his right to access the courts if he can show the following: (1) Prusak "deliberately and maliciously interfered" with his right to access to the Article 78 court, and (2) "the interference resulted in injury." *Doe v. Green*, 593 F. Supp. 2d 523, 537 (W.D.N.Y. 2009). To elaborate on the second element, the relevant inquiry is whether the defendant's actions "hindered a plaintiff's efforts to pursue a legal claim," such that, for instance, the plaintiff suffered a "dismissal of an otherwise meritorious legal claim." *Stubbs v. de Simone*, No. 04 CIV. 5755RJHGWG, 2005 WL 1079286, at *12 (S.D.N.Y. May 9, 2005) (citations, internal quotations, and internal alterations omitted).

At this point, the Court must observe that it is actually not at liberty to consider the

access-to-the-courts claim on summary judgment.  This is because Defendant Prusak did not

address this claim in her summary judgment motion; rather, she only appears to have addressed

the due process claim discussed in the preceding subsection by briefly arguing that McGowan

has "no constitutional right to a hearing transcript."  ECF No. 8-5 at 8 n.2.  Thus, the access-to-

the-courts claim is not ready for summary-judgment review.

 The Court will, however, examine whether the allegations underlying this claim actually

support a claim on which relief can be granted.  Once again, McGowan is proceeding *in forma*

*pauperis*; thus, the Court has the power to dismiss a case or part of a case "at any time" if it "fails

to state a claim on which relief can be granted."  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  In

evaluating the Amended Complaint under this standard, the Court undergoes the same process as

if a defendant moved to dismiss the complaint for failure to state a claim.  *See* Fed. R. Civ. P.

12(b)(6).  First, the Court accepts McGowan's well-pled factual allegations as true, though,

importantly, it need not accept as true any bare, unadorned allegations that lack specificity.  *See*

*Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009).  Second, it evaluates whether the complaint "state[s]

a claim to relief that is *plausible* on its face.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007) (emphasis added).

 McGowan's access-to-the-courts claim against Prusak does not meet this standard.  First,

in only the most conclusory fashion, McGowan alleges that Prusak "intentionally falsified the

transcript."  ECF No. 4 at ¶ 24.  This sort of bare, unadorned allegation about Prusak's state of

mind is exactly the sort of allegation that the Court need not accept as true.  It is not supported by

any specific allegations or descriptions of circumstances which could give rise to an inference

that Prusak acted deliberately or maliciously.  Accordingly, McGowan's allegations are

insufficient to satisfy the first element of an access-to-the-courts claim.

The second element of the claim is also not satisfied.  Once again, to meet this element, McGowan must allege that he suffered an "actual injury" due to the alteration in the transcript. *See Stubbs*, 2005 WL 1079286, at *12 (citations and internal quotations omitted).  McGowan has failed to allege that he was injured by the alteration, that is, he has failed to allege that the alteration hindered his efforts to pursue his claims in the Article 78 proceeding.  Moreover, it is unclear to the Court how the alteration could plausibly have hindered the Article 78 claims; the hearing transcript spans about 140 pages (ECF No. 8-4), and McGowan's access-to-the-courts claim against Prusak rests on the allegation that she changed exactly one word in this transcript (ECF No. 4 at ¶¶ 22–25).  Accordingly, McGowan certainly faces an uphill battle if he were to eventually try to establish that Prusak's one-word alteration caused him injury in the Article 78 proceeding.

Additionally, the Court notes that Article 78 has a specific provision that addresses errors in hearing transcripts.  First, Article 78 provides that when a petitioner is seeking review of an agency proceeding, the agency officials shall "file . . . a transcript of the record of the proceedings under consideration."  N.Y. C.P.L.R. § 7804(e).  The provision in question then states that if there is "any defect or omission in the . . . transcript," the officials shall correct the defect.  *Id.*  The effect of this provision in the context of prisoners challenging prison disciplinary proceedings is that "[i]n New York, a prisoner who disputes the accuracy of the transcript of a disciplinary hearing may raise that issue in an Article 78 proceeding."  *Excell*, 2009 WL 3124424, at *22.  All of this is to say that McGowan could have corrected the transcript error in the Article 78 proceeding itself.  Thus, it is again difficult to see how McGowan could have been at all injured by the alteration.

In sum, for the reasons above, McGowan has failed to sufficiently allege an access-to-

the-courts claim against Prusak.  Accordingly, while the Court will not address the claim on summary judgment, it will exercise its power under 28 U.S.C. § 1915(e) to dismiss the claim without prejudice.

### 2. *Defendant Borawski*

Defendant Borawski was the hearing officer for the November 2009 hearing.  Notably, Borawski sentenced to McGowan to 18 months in the SHU after the hearing.  McGowan asserts that Borawski violated his due process rights for five reasons: (1) Borawski did not allow McGowan to call a certain inmate witness; (2) Borawski extended the time of the hearing for 14 days; (3) Borawski never obtained a list of items from commissary which contained alcohol; (4) Borawski prejudged McGowan's guilt before all the evidence was presented; and (5) more generally, Borawski relied on "false evidence" to render the guilty disposition.

In his motion for summary judgment, Borawski invokes issue preclusion.  ECF No. 8-5 at 3–5.  In short, Borawski asserts that McGowan previously raised all of these same five issues in the Article 78 proceeding, and the state court ruled against McGowan on each of the issues.  *Id.* (citing *McGowan*, 930 N.Y.S.2d at 313–14).  Thus, Borawski argues that McGowan should be precluded from relitigating these issues in the present action.  *Id.*

Issue preclusion indeed bars parties from relitigating issues that have already been litigated and determined by a court in a prior action.  *See Constantine v. Teachers Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011).  The doctrine applies with full force when the prior action was in state court and the subsequent action is in federal court.  *See, e.g.*, *Giakoumelos v. Coughlin*, 88 F.3d 56, 59–61 (2d Cir. 1996) (giving preclusive effect to issues raised in a federal § 1983 action because they were previously litigated and determined in an Article 78 action).  In such a situation, the federal court must give the same preclusive effect to the state court judgment "as

would be given to the judgment under the law of the [s]tate in which the judgment was rendered." *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir. 1996) (citing the Full Faith and Credit Statute, 28 U.S.C. § 1738).  In other words, this Court looks to New York law to determine whether issue preclusion applies here.

Under New York law, issue preclusion has three elements: (1) the same issue was raised in both proceedings; (2) the issue was actually decided, and necessary to that decision, in the prior proceeding; and (3) the plaintiff had a full and fair opportunity to contest the issue in the prior proceeding. *See Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500–01 (1984); *Allied Chem., an Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276 (1988). If all three elements are met for an issue, the plaintiff may not relitigate that issue in a subsequent action.  These three elements are discussed below with respect to the five issues raised against Borawski.

   *a.   Same Issue*

The first element requires that the same issue was raised in both proceedings. Accordingly, the Court must carefully review McGowan's Article 78 petition to determine whether he already raised any of the issues against Borawski that he now raises in the present action.  Such a review reveals that McGowan indeed already raised four issues that he now raises in this action—Borawski failed to call a certain witness, Borawski extended the hearing time, Borawski never obtained a list of alcoholic items from the commissary, and Borawski prejudged McGowan.  Petition at ¶¶ 12–15, 28–36, 52–57.  Moreover, McGowan raised these issues in the petition to argue specifically that the hearing violating his federal due process rights.  Petition at ¶ 64 ("[The disciplinary] determination was obtained in violation of [my] federal due process [rights] . . . .").  In short, McGowan already raised these exact four issues in the Article 78

proceeding, and thus the first element of issue preclusion is satisfied with regard to these issues.

The fifth issue in question—Borawski relied on "false evidence" in rendering the guilty disposition—was arguably raised in the Article 78 petition.  McGowan certainly repeatedly asserted in the petition that the hearing was tainted by false or contradictory reports and testimony.  *Id.* at ¶¶ 23–27, 60–61.  In an abundance of caution, however, the Court will find that the issue was not explicitly raised in the petition, and thus it will be discussed on the merits separately.

> b.  *Issues Were Actually Decided by Prior Court and Necessary to Decision*

The second element of issue preclusion requires that the issue or issues were *actually decided* by the prior court and *necessary* to that decision.  To evaluate whether this element is satisfied for the four issues in question, the Court must review the Article 78 court's decision, the analysis section of which is set forth in full below.  Notably, the focus here is on the second to last sentence, which the Article 78 court used to concisely address the issues raised against Borawski:

> We confirm [decision of the disciplinary proceedings]. Substantial evidence, consisting of the misbehavior report, documentary evidence and extensive testimony adduced at the hearing, supports the determination of guilt. Any discrepancies in the time of the incident noted in the log book and the other documents were adequately explained by the keeper of the log book, who stated that he inadvertently wrote down the wrong time due to the fact that the battery in the clock he relied upon was dead. Moreover, while petitioner maintained that he was innocent of the charges and was "set up," this presented a credibility issue for the Hearing Officer to resolve. Furthermore, although petitioner asserts that the misbehavior report should have been endorsed by the correction officer present during the incident who did not author the report, petitioner has not demonstrated that he was prejudiced by the lack of the officer's endorsement given that the officer testified at the hearing. **Finally, upon reviewing the record, we reject petitioner's claim that the Hearing Officer did not conduct a fair and impartial hearing and find nothing to indicate that the**

> **outcome of the hearing flowed from any alleged bias.**
> Petitioner's remaining contentions, to the extent that they are
> properly before us, have been considered and are unavailing.

*McGowan*, 930 N.Y.S.2d at 313–14 (emphasis added) (internal citations omitted).

The first question is whether, with this sentence, the Article 78 court *actually decided* each of the four issues in question concerning Borawski.  There is no doubt that the sentence, which broadly speaks to Borawski's impartiality and lack of bias, does not precisely address each of the four issues in question, which more narrowly relate to Borawski not calling a witness, extending the hearing, not obtaining a certain list from commissary, and prejudging McGowan.

The Court finds, however, that even though the Article 78 court did not precisely address each of these four issues, its determination that the hearing was "fair" functions as an actual decision on each of the issues.  In short, subsumed within the determination that the hearing was "fair" is a sweeping rejection of each of the four process-related issues that McGowan raised against Borawski.  There is a significant amount of precedent for giving this kind of preclusive effect to broad state court determinations.  *See, e.g.*, *Dolan v. Roth*, 170 F. App'x 743, 746–47 (2d Cir. 2006) ("[The] state court . . . indicated that [it] reviewed [the petitioner's] remaining contentions and found them to be without merit.  Subsumed within th[is] holding[] was the factual determination that defendants did not terminate [the petitioner] based on any of the [specific] motives described in his pleadings and submissions. Accordingly, we hold that the claims presented in [the plaintiff's] complaint were actually and necessarily decided in defendants' favor in the prior proceedings.") (internal citations omitted); *see also Ford v. Krusen*, No. 9:06-CV-890FJS/DEP, 2008 WL 190424, at *6 (N.D.N.Y. Jan. 15, 2008) ("[W]hile not all of [the plaintiff's] arguments were specifically addressed by the Third Department in its decision, disposing of plaintiff's Article 78 petition, that court concluded its determination by

stating that his 'remaining contentions have been reviewed and determined to be without merit.'
That determination is entitled to preclusive effect . . . .") (internal citations omitted).

In short, this Court determines that the state court actually decided each of the four
process-related issues that McGowan raised in his petition against Borawski.

The Court also finds that the state court's determination on each of the four issues was
*necessary* to its ultimate decision to dismiss McGowan's petition.  This can be illustrated simply:
if the state court ruled in favor of McGowan, not Borawski, on any of these process-related
issues, the Article 78 petition would not have been dismissed.  So finding in favor of Borawski
on each of the issues was required— *i.e.* it was necessary—to the ultimate decision to dismiss the
petition.

In sum, because each of the four issues were actually decided by the state court and
necessary to that decision, the second element of the issue preclusion analysis is satisfied.

*c.  Full and Fair Opportunity to Litigate*

The third element requires that the plaintiff had a full and fair opportunity to contest the
issue or issues at the prior proceeding.  As for this element, as long as the procedures in the prior
proceeding meet "the minimum demands of procedural due process," courts will generally find
that the plaintiff was afforded a full and fair opportunity to litigate these issues.  *Feldstein v. New
York State Office of Mental Health, Bronx Psychiatric Ctr.*, 846 F. Supp. 1089, 1101 (E.D.N.Y.
1994).  Moreover, as courts in this Circuit have observed, "[p]arties to a previous Article 78
proceeding generally have had a full and fair opportunity to litigate the issues raised in that
proceeding."  *Rahman v. Acevedo*, No. 08 Civ. 4368(DLC), 2011 WL 6028212, at *5 (S.D.N.Y.
Dec. 5, 2011).

Here, there is no indication that McGowan was not afforded a full and fair opportunity to

litigate these issues in the Article 78 proceeding.   Notably, to the extent McGowan would argue that Prusak's alteration of the disciplinary hearing transcript hindered his ability to fully and fairly litigate in state court, the argument is unavailing.   First, the Court does not believe that a one-word alteration in a 140-page disciplinary hearing transcript could have so tainted the Article 78 proceeding that it fell below the standards of due process.   Second, the Court observes once again that, per a specific provision in Article 78, McGowan could have had the hearing transcript corrected in the Article 78 proceeding itself.   *See* N.Y. C.P.L.R. § 7804(e); *Excell*, 2009 WL 3124424, at *22.   Thus, he had an adequate remedy if he wanted to fix this possible defect in the state court proceeding.

In sum, the third element of issue preclusion is satisfied for the four issues in question—Borawski failed to call a witness, Borawski extended the hearing time, Borawski never obtained a list of alcoholic items from commissary, and Borawski prejudged McGowan.   Thus, McGowan is precluded from relitigating these issues in this action.

### d. Borawski Relied on "False Evidence" to Render the Guilty Disposition

There is still one final process-related issue regarding Borawski that the Court previously determined was not raised by McGowan in his state court petition.   It is that Borawski relied on "false evidence" to render the guilty disposition.   ECF No. 4 at ¶ 19.

This issue can be handled briefly.   In short, the assertion that Borawski relied on "false evidence" cannot itself support a due process claim.   Due process is concerned with the *procedures* a person receives at the proceeding in question.   *See Rideout*, 808 F.2d at 952–53.   It is not specifically concerned with the trustworthiness or reliability of reports or testimony provided at the hearing; due process is simply supposed to put in place the procedures that allow the factfinder to test whether evidence is trustworthy and reliable.   For this reason, Judge Arcara

previously dismissed all due process claims based on false reports and false testimony.  *See supra* Part I.A.  For the same reason, the Court now dismisses the due process claim against Borawski for relying on "false evidence" to render a guilty disposition.

### e. McGowan's Claim Preclusion Argument

Finally, the Court notes briefly that, in his response to the summary judgment motion, McGowan makes a broad argument against the application of issue preclusion.  In short, he argues that because the Article 78 court was not able to award him the full measure of relief he seeks here—specifically, the Article 78 court was not able to award money damages—he should be allowed to relitigate the issues referenced above against Borawski.  ECF No. 10-4 at 5–16. This is actually a cogent argument against *claim* preclusion, which prevents parties from relitigating entire *claims* that were already decided in a prior action.  *See Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 606 (S.D.N.Y. 1990).  Indeed, for precisely this reason, claim preclusion does not prevent McGowan from relitigating his due process claim against Borawski in this action even though McGowan brought a similar due process claim in the Article 78 action.  *See Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004).  The *issues* underlying that claim can, however, be precluded in the second action even if the first court could not have granted the full measure of relief on the overarching claim.  *See Phillips*, 750 F. Supp. at 606.  Accordingly, McGowan's argument against the application of issue preclusion is unavailing.

In sum, for the reasons above, Borawski's motion for summary judgment is granted.

### 3.  *Defendant Rozanski*

Defendant Rozanski was the official who smelled the bottles found in McGowan's cell and determined that they contained homemade alcohol.  Rozanski then destroyed the bottles and

contents of the bottles prior to McGowan's disciplinary hearing.  McGowan argues that Rozanski's destruction of this evidence hindered his ability to present an effective defense at the hearing.  In short, McGowan asserts a due process claim against Rozanski.

Once again, the Court observes that in his Article 78 petition, McGowan raised the issue of Rozanski destroying evidence prior to the hearing.  Petition at ¶¶ 3, 6, 16, 46–48, 51, 64 ("Failure to save all nine of the confiscated cosmetics bottles, which [were] alleged to have contained homemade alcohol, until the conclusion of the disciplinary proceedings . . . prejudic[ed] petitioner's . . . defense.").  Moreover, he raised this issue to demonstrate, among other things, that the disciplinary hearing did not accord with federal due process.  Petition at ¶ 64.  ["The disciplinary] determination was obtained in violation of [my] federal due process [rights] . . . .").  In other words, the first element of the issue-preclusion analysis is satisfied.

The next element in the analysis requires that the issue was actually decided by the prior court and necessary to that decision.  Once again, while the Article 78 court did not precisely address the destruction-of-evidence issue, it did broadly determine that the hearing conducted was "fair."  *McGowan*, 930 N.Y.S.2d at 313–14.  In the Court's view, this determination is critical for issue preclusion purposes—by deeming the hearing "fair," the Article 78 court actually decided all of the process-related issues before it, which in some form or another were based on the idea that the hearing was unfair.  In other words, by determining that the hearing was "fair," the Article 78 court necessarily rejected McGowan's contention that his due process rights were violated by Rozanski destroying evidence prior to the hearing.[8]  Furthermore, the

---

[8]     The Court observes that the analysis section of the Article 78 court's decision concludes with the following indiscriminate sentence: "Petitioner's remaining contentions, to the extent that they are properly before us, have been considered and are unavailing."  *McGowan*, 930 N.Y.S.2d at 314.  This sentence would appear to function as a blanket rejection of all of McGowan's contentions that were not specifically resolved earlier in the decision, which would include the

Article 78 court's rejection of this contention was necessary to its ultimate decision to dismiss McGowan's petition; if the court found that McGowan was not afforded with due process because of this destruction of evidence, it would not have been able to dismiss his petition. IN short, the second element of the issue-preclusion analysis is satisfied.

As for the third element, the Court has already determined that McGowan had a full and fair opportunity to litigate the issues in the state court.

In sum, McGowan is precluded from relitigating the issue of whether his due process rights were violated by Rozanski destroying the bottles of homemade alcohol prior to the disciplinary hearing. Thus, Rozanski's motion for summary judgment is granted.

### 4. *Defendant Jelonek*

Defendant Jelonek was a nurse at Attica in 2011. McGowan's claim against Nurse Jelonek stems from an alleged beating McGowan suffered at the hands of Attica officials on July 26, 2011. McGowan sustained a large gash wound to his head during the beating as well as bruising to his face and body. When McGowan went to the prison hospital for treatment, Nurse Jelonek refused to stitch the wound and instead only covered the wound with gauze prior to taking pictures. McGowan argues that Jelonek's failure to apply stitches to his head wound, which was bleeding "constant[ly]" and which resulted in permanent scarring, constituted deliberate medical indifference. *Id.* at ¶¶ 60–62; ECF No. 10-1 at ¶¶ 3, 5, 9–11.

When a prison official's denial of medical care rises to the level of "deliberate indifference" to serious medical needs, it violates the Eighth Amendment's prohibition on cruel

---

destruction-of-evidence issue. Upon close inspection, however, the sentence is useless from an issue-preclusion perspective because of its intervening clause—"to the extent that [the remaining contentions] are properly before us." In short, because of this clause, this Court cannot be sure that the destruction-of-evidence issue was properly before the Article 78 court, and thus it cannot be sure that the issue was actually decided by the Article 78 court.

and unusual punishment.  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  Thus, a prisoner can

sustain a constitutional claim against medical personnel by satisfying both elements of the

deliberate indifference standard.  *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).

First, in an objective sense, the prisoner must show that "the alleged deprivation [was]

sufficiently serious, in the sense that a condition of urgency, one that may produce death,

degeneration, or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)

(citations and internal quotations omitted).  Second, in a subjective sense, the prisoner must show

that the official acted with a "culpable state of mind" which, per the Second Circuit, equates to

"recklessness" as that term is used in criminal law.  *Id.*

      In his motion for summary judgment, Nurse Jelonek appears to focus on the first element.

Jelonek argues in cursory fashion that he "did not feel that plaintiff required stitches.

Disagreement over whether plaintiff should have been given stitches is not the basis for

liability."  ECF No. 8-5 at 8–10.  This brief argument is supported by Jelonek's declaration,

where he asserts without elaboration that "[i]t was my medical opinion that stitches were not

needed for the minor injuries presented to me."  ECF No. 8-3 at ¶ 13.

      Jelonek's argument is generally based on the principle that "mere disagreement over the

proper treatment [between the prisoner and prison official] does not create a constitutional

claim."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  As McGowan points out,

however, this principle is counterbalanced by the idea that "a physician may be deliberately

indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan."  ECF

No. 10-4 at 12 (quoting *Chance*, 143 F.3d at 703).  The question thus becomes whether this is a

case of mere disagreement between McGowan and Jelonek about a form of treatment, or whether

Jelonek intentionally chose an easier form of treatment despite a possibly serious injury.

26

On the evidence submitted by the parties, the Court cannot say that as a matter of law, Jelonek and McGowan merely disagreed about treatment. McGowan has asserted in sworn statements that Jelonek failed to stitch an open gash wound to his head that was bleeding "constant[ly]." ECF Nos. 4 at ¶¶ 60–62; 10-1 at ¶¶ 3, 5, 9–11. This untreated wound ultimately resulted in permanent scarring. *Id.* To be frank, Jelonek has provided little in the way of even disputing those assertions by briefly arguing that he "did not feel that plaintiff required stitches" and by stating in a declaration that "[i]t was [his] medical opinion that stitches were not needed." ECF No. 8-3 at ¶ 13. Notably, Jelonek's position almost seems to be that as long as a nurse has a feeling or medical opinion about a form of treatment, any discord between the nurse and prisoner about treatment is a "mere disagreement" that immunizes the nurse from a deliberate indifference claim. That is not the law. Nurse Jelonek has failed to demonstrate that this is not a case where he chose a less efficacious form of treatment for a potentially serious injury.

In short, in summary judgment terms, there is a genuine dispute of material fact as to whether McGowan's gash wound constituted a sufficiently serious injury that Jelonek failed to adequately treat. Thus, Jelonek's motion for summary judgment on the deliberate indifference claim is denied.

## II.     MOTION FOR DEFAULT JUDGMENT

McGowan has also filed a motion for default judgment against four of the defendants, Hulton, Hibsch, Meegan, and Rademacher. ECF No. 19. Notably, it is not entirely clear to the Court why McGowan moved for default judgment against these four defendants in particular. In any event, McGowan's motion is analyzed below.

Default and default judgment are governed by Rule 55 of the Federal Rules of Civil

Procedure.[9]  The basic principle behind Rule 55 is that courts have the power to simply enter

judgment against a defendant that fails to appropriately defend a case.  Fed. R. Civ. P. 55.

McGowan's argument in support of default judgment appears to be as follows.

Defendants Hulton, Hibsch, Meegan, and Rademacher were all served with the Amended

Complaint in 2014.  ECF No. 19 at ¶ 4; ECF No. 6.  None of the four, however, ever filed an

answer to the Amended Complaint.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Rather, the attorney for all of

the defendants in this case (with the exception of Defendant Rademacher), New York State

Assistant Attorney General Gary Levine, simply moved for summary judgment on behalf of

some of the defendants.  ECF No. 8.  Herein lies the problem in terms of default: Rule 56 of the

Federal Rules of Civil Procedure, which of course governs summary judgment motions, does not

specifically provide that summary judgment motions stay the time in which a defendant may

answer the complaint.  This makes Rule 56 noticeably different from Rule 12; Rule 12 *does*

specifically provide that motions to dismiss filed under Rule 12 stay the time in which a

defendant may answer the complaint.  Fed. R. Civ. P. 12(a)(4).  Accordingly, as McGowan

points out, a defendant who moves for summary judgment without filing an answer has not

actually stopped the clock on answering the complaint.  Accordingly, such a defendant may be

default if the designated time period for answering runs out.

Technically speaking, McGowan's argument is correct, though there are a few problems

with accepting it in this particular case.  First, one of the defendants, Rademacher, was actually

---

[9]     McGowan also cites Rule 37 of the Federal Rules of Civil Procedure as authority for his
default judgment motion.  ECF No. 19 at 1.  Rule 37 is generally concerned with discovery
violations.  *See* Fed. R. Civ. P. 37.  It indeed allows a court to enter default judgment against a
party for two particularly egregious discovery violations—when a party disobeys a court order
(Fed. R. Civ. P. 37(b)(2)(A)(vi)), or when a party intentionally destroys information that it
should have preserved for litigation (Fed. R. Civ. P. 37(e)(2)(C)).  In this action,
the parties have not yet initiated discovery or had a conference pursuant to Rule 26(f) to plan for
discovery.  Fed. R. Civ. P. 26(f).  Accordingly, Rule 37 is inapplicable.

not served with the Amended Complaint in 2014.  Rather, he was just recently served with the

Amended Complaint on August 5, 2016.  ECF No. 24.  As the docket reflects, he now has until

October 5, 2016 to file an answer.  *Id.*  Accordingly, there is no argument, technical or otherwise,

that Rademacher is in default.

The analysis of the other three defendants requires a little context about the process of

moving for default judgment.  Rule 55 provides for a "two-step process for the entry of judgment

against a party who fails to defend: first, the entry of a default, and second, the entry of a default

judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)

(citations and internal quotations omitted).  At the first step, the plaintiff must seek and obtain an

entry of default from the clerk of court.  Fed. R. Civ. P. 55(a).  In effect, this entry of default

"formalizes a judicial recognition that a defendant has, through its failure to defend the action,

admitted liability to the plaintiff."  *Id.*  At the second step, the plaintiff must apply for a judgment

of default from, typically, the court itself.  Fed. R. Civ. P. 55(b).  The default judgment "converts

the defendant's admission of liability into a final judgment that terminates the litigation and

awards the plaintiff any relief to which the court decides it is entitled."  *Mickalis Pawn Shop*, 645

F.3d at 128.

The key takeaway from the above is that "[t]he entry of default by the Clerk is a

mandatory pre-condition to seeking default judgment from the Court."  *Rexo Imports LLC v.

Brighton Ford*, *Inc*., No. 14-CV-6037-FPG, 2015 WL 500488, at *2 (W.D.N.Y. Feb. 4, 2015);

*Fairman v. Hurley*, 373 F. Supp. 2d 227, 231 (W.D.N.Y. 2005) ("Without first obtaining an

entry of default, plaintiff cannot obtain a default judgment from this Court.").  Here, McGowan

skipped straight to the second step in moving for a default judgment before first obtaining an

entry of default from the Clerk.  Accordingly, McGowan's motion for default judgment is

procedurally flawed, and that alone is a basis for denying his motion.

Apart from the procedural impropriety of McGowan's motion, the Court notes that it has a strong preference for resolving cases on the merits. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits."); *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits."). This is especially true in this case, where the three defendants who have yet to file an answer have all appeared through counsel. Moreover, based on the summary judgment motion discussed above, defendants' counsel clearly desires to contest this action on the merits. Accordingly, for this reason as well, McGowan's motion for default judgment is denied.

Defendants' counsel should, however, be mindful of the following words of caution. The Court's denial of McGowan's motion for default judgment is by no means an endorsement of summary judgment motions filed in lieu of answers, especially against *pro se* litigants. This Court has repeatedly criticized these types of motions, and it has indeed already advised the New York State Attorney General's Office in particular that such motions raise the specter of default. *See e.g.*, *Fowler v. Fischer,* No. 13-CV-6546-FPG, 2016 U.S. Dist. LEXIS 16278, at *4 n.2 (W.D.N.Y. Feb. 10, 2016) ("Although Defendants appear to believe that a motion for summary judgment filed in lieu of an answer stays the deadline for filing a responsive pleading under Rule l 2(a) of the Federal Rules of Civil Procedure, it is far from clear that it does so."). The Court reiterates here once again that a summary judgment motion filed in lieu of an answer and prior to discovery, especially against a *pro se* litigant, is appropriate only in the most "limited circumstances." *See Houston v. Sheahan*, No. 13-CV-6594-FPG, 2016 WL 554849, at *2 (W.D.N.Y. Feb. 10, 2016).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court makes the following determinations.  First, Defendants Schuck, Novara, Valentino, Philips, Hadsall, and Biehl were already dismissed from this case by the June 10, 2014 screening order.  Second, the claims against Defendants Hulton and Rozanski based on false reports and false testimony in connection with the November 2009 disciplinary hearing were also dismissed by the screening order.  Third, all official-capacity claims for money damages under § 1983 are dismissed.  Fourth, the motions for summary judgment by Defendants Prusak, Rozanski, and Borawski are GRANTED.  Fifth, the motion for summary judgment by Defendant Jelonek is DENIED.  Sixth, the motion for default judgment by McGowan is DENIED.

Finally, the Court schedules a status conference for September 30, 2016 at 10:30 a.m.

IT IS SO ORDERED.

Dated: September 6, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court